UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

| | | |
|---|---|---|
| PARROT MARKETING, LTD. et al., | : | CASE NO. 5:02-CV-1765 |
| Plaintiffs, | : | |
| | : | OPINION & ORDER |
| vs. | : | |
| | : | [Resolving Doc. Nos. 88, 89] |
| FINELINE PROPERTIES.COM, INC. and ROBERT PETRY, | : | |
| Defendants. | : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Under Rule 60(b)(1) of the Federal Rules of Civil Procedure, Defendants Fineline Properties.com, Inc. and Robert Petry ("Fineline" and "Petry," respectively) move to vacate the Court's judgment against them. [Doc. 88.] Defendants also move to stay execution of collection proceedings that arise from this lawsuit. [Doc. 89.] Plaintiffs Parrot Marketing, Ltd. et al. ("Parrot") oppose Defendants' motions. [Doc. 90.] For the reasons stated below, the Court **DENIES** Defendants' motion to vacate judgment and **DENIES** Defendants' motion to stay execution of collection proceedings.

I. Background

A long, litigious, and contumacious history precedes Defendants' instant motions. The underlying lawsuit started on September 6, 2002, when Parrot sued Fineline and Petry for breach of contract, misrepresentation and fraud, breach of covenant of good faith and fair dealing, tortious interference with contract, and tortious interference with a business relationship. [Doc. 1.] The

Case No. 5:02-CV-1765
Gwin, J.

original lawsuit involved the exclusivity of the parties' marketing and licensing agreement for "Kooties," a trademarked property owned by Fineline and Petry. [Docs. 1, 15.] On February 3, 2003, after a fair amount of initial litigation, the Court referred the parties' disagreement to mediation pursuant to Local Rule 16.6 et. seq. [Doc. 38.]

On February 13, 2003, the parties mediated their dispute before Douglas Drushal, the Court-appointed mediator. At the end of the mediation, the parties entered into a settlement agreement ("Settlement Agreement"). [Docs. 41, 42.]

The terms of the Settlement Agreement are straightforward. Defendants agreed to pay Parrot $250,000 and interest by February 13, 2005 ("Settlement Amount"). [Doc. 42 at 2.] To secure payment of the $250,000 and interest, Defendants gave Plaintiffs a lien on the revenue stream of the Kooties trademark. *Id.* at 2-3, 5-6. Defendants also agreed to pay Parrot commissions and/or royalties in an amount to be agreed by the parties at a subsequent mediation. *Id.* at 4.

The relevant portion of the transcript from the settlement conference reads as follows:

> THE COURT: This case, Parrot Marketing versus Fineline Properties, came before the Court today for purposes of a mediation. Mr. Douglas Drushal, one of the ADR panel attorneys, had been assigned to attempt to mediate the parties' dispute, and Mr. Drushal indicates to me that the parties have settled their dispute, and that I would ask him, if he could, to relate what he understands the settlement is.
>
> DRUSHAL: Thank you, Your Honor. My understanding of what has been agreed to, subject to counsel confirming this, is that the parties will execute a mutual release from the existing contract between the parties so that they will not be doing business together prospectively.
>
> That the defendant Fineline will agree to a payment to the plaintiffs in the amount of $250,000. That payment will bear interest, or that amount will bear interest at 10% unless they make a payment of at least one half or $125,000 within one year.

Case No. 5:02-CV-1765
Gwin, J.

>And if that payment is made within the one year, then there's no interest on it at all.
>
>And the $250,000 would be completely due and payable within two years.
>
>And as security for that deferred payment, Fineline will grant a lien on the revenue stream from the Kooties product line which is the subject of the dispute – the parties will have to identify that with a little more detail in writing – but what we are referring to as the Kooties line so that any, any income of any type that could be attributable to the Kooties line will be subject to this lien as security for the $250,000 payment.  And there is also a dispute over what amount, if any, is due as of today for sales that have already occurred through today.  Under the parties' agreement, a royalty was to be paid under certain percentages and in certain circumstances, and the parties have agreed to submit to me for binding arbitration-type decision the amount of that royalty, if any which is owed.

*Id.* at 2-3.

The transcript reflects Petry's presence and participation in the closing of the Settlement Agreement after Drushal's recitation of the terms:

>PETRY: We are done right now.  This is over?
>
>[DEFENDANTS' COUNSEL]: Yes.
>
>THE COURT: Yes.
>
>[DEFENDANTS' COUNSEL]: [Parrot] can't change their minds here?
>
>THE COURT: No, it's over.
>
>PETRY: It's over.
>
>[DEFENDANTS' COUNSEL]: And nor can you, I might add.
>
>PETRY: Thank you. [To Drushal,] Sorry to be so tough on you.
>
>DRUSHAL: No problem.

Case No. 5:02-CV-1765
Gwin, J.

*Id.* at 8-9

At the close of the settlement conference, the parties, through their counsel, agreed to the settlement's terms:

> THE COURT: And I think it was implicit that under the terms of the settlement agreement that [were] set out by the parties, the parties have agreed to settle this matter under those terms, but I wanted to have the parties relate that those are the terms.
>
> And so I'd ask the representative from Fineline and counsel to identify that this is the agreement they have reached on the record. And --
>
> [PLAINTIFFS' COUNSEL]: Yes.
>
> THE COURT: And under the terms that we set out.
>
> [DEFENDANTS' COUNSEL]: It is, Your Honor.  That is, in fact, the agreement we reached.
>
> [PLAINTIFFS' COUNSEL]: This is the agreement we reached today.
>
> THE COURT: Okay. Thank you.
>
> DRUSHAL: Thank you.

*Id.* at 9.

At a subsequent mediation, the parties agreed that Defendants would pay Parrot $5,160.81 and interest in commissions. [Doc. 47.]  The Court ordered the case settled and marked the docket as "settled and dismissed with prejudice." [Doc. 41.]  The Court retained jurisdiction over any issues arising from the implementation of the agreement's terms and conditions.  *Id.*

Despite their expressed intention to enter into the Settlement Agreement, Defendants have not performed as they promised.  Instead of paying Parrot the agreed-to amounts as they became due, Defendants paid nothing.  As a result, Parrot moved for an order to enforce the terms of the

-4-

Case No. 5:02-CV-1765
Gwin, J.

Settlement Agreement. [Doc. 43.] On May 22, 2003, the Court granted Parrot's motion to enforce, and ordered Defendants pay the past-due commissions. [Doc. 47.] Still, Defendants did not pay. On February 24, 2004, Parrot then moved for orders of contempt, enforcement, and sanctions against Defendants. [Doc. 51.] On February 25, 2004, the Court referred Parrot's motions to Magistrate Judge George Limbert for a Report and Recommendation pursuant to Local Rule 72.1. [Doc. 54.]

In early 2004, Magistrate Judge Limbert conducted discovery hearings attended by counsel for both parties and then issued a Report and Recommendation. [Docs. 62, 65.] In his report, Magistrate Judge Limbert reiterated the terms of the February 13, 2003 Settlement Agreement. *Id.* Magistrate Judge Limbert noted that Defendants disputed the timing, but not the terms, of the payment of the Settlement Amount. [Doc. 63 at 2.] He noted that Defendants admitted that they had not secured the Kooties revenue stream as they had promised to do. *Id.* Defendants also admitted that they had not paid Parrot the agreed-to commissions. *Id.* Based on Defendants' non-compliance with the terms of the Settlement Agreement and their disregard for the Court's enforcement Order, Magistrate Judge Limbert recommended that the Court hold Defendants in contempt and impose sanctions upon them. [Doc. 65.]

Neither party objected to the Report and Recommendation, which the Court reviewed and adopted. [Docs. 64, 66.] On May 20, 2004, the Court issued three orders: (i) Defendant pay Parrot the agreed-to commissions; (ii) Defendants pay Parrot the entire $250,000 and interest by February 13, 2005; (iii) Defendants execute a security agreement on the revenue stream from the Kooties product line. [Doc. 64.] Defendants ignored this Order. As a result, on August 2, 2004, the Court held Defendants in contempt and imposed sanctions upon them. [Doc. 66.]

Still, Defendants did nothing. The February 13, 2005 deadline for Defendants' deferred

Case No. 5:02-CV-1765
Gwin, J.

payment of the Settlement Amount came and went. On May 27, 2005, the Court entered judgment of $324,297.44 against Fineline and $17,211.14 against Petry ("May 2005 Order"). [Doc. 79.] Apparently, this Order finally obtained Defendants' attention and, on July 25, 2005, they filed an appeal with the Sixth Circuit. [Doc. 82.] On November 2, 2005, the Appellate Court *sua sponte* dismissed Defendants' notice. [Doc. 84.]

Defendants went silent again until May 16, 2006, when they filed the instant motions [Docs. 88, 89.] Defendants now say that the Settlement Agreement and May 2005 Order are premised on "mistakes" from which Rule 60(b)(1) of the Federal Rules of Civil Procedure shields them. [Doc. 88.] Consequently, Defendants say that the Court should vacate its May 2005 Order and order a stay on all collection proceedings stemming from the Settlement Agreement. [Doc. 89.] Plaintiffs disagree with Defendants' arguments in both motions. [Doc. 90.] The Court disagrees, too.

## II. Legal Standard

Defendants invite the Court to consider their motion to vacate under Ohio's procedural rules. [Doc. 88.] The Court declines this invitation, but will consider their motion under the Federal Rules of Civil Procedure and the substantive law of Ohio. *See, e.g.*, *Erie v. Tompkins*, 304 U.S. 64 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).

Federal Rule of Civil Procedure 60(b)(1) provides that "on motion and upon such terms as are just, the court may relieve a party . . . from final judgment . . . for . . . mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). The Rule "is intended to provide relief in only two situations: (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002). Under the rule,

Case No. 5:02-CV-1765
Gwin, J.

neither strategic miscalculation nor misinterpretation of the law warrants relief from a judgment. *McCurry v. Adventist Health System / Sunbelt, Inc.*, 298 F.3d 586, 593 (6th Cir. 2002).

A settlement agreement is a binding contract subject to the essential requirements of contract law. *See, e.g.*, *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 104 Ohio St. 3d 559, 564, 820 N.E.2d 910 (2004); *Marshall v. Beach*, 143 Ohio App. 3d 432, 435, 758 N.E.2d 247 (2001). A district court has the inherent power to enforce an agreement entered into in settlement of litigation pending before them even if that agreement has not been reduced to writing. *See, e.g.*, *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.) (citations omitted), *cert. denied*, 429 U.S. 862 (1976); *Bowater N. Am. Corp. v. Murray Mach.*, 773 F.2d 71, 77 (6th Cir. 1985) (citation omitted). Before enforcing settlement, the district court must conclude that agreement has been reached on material terms. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988).

Under Ohio law, "[t]he purpose of contract construction is to effectuate the intent of the parties, which is presumed to reside in the language they chose to employ in the agreement." *R.J. Reynolds*, 104 Ohio St. 3d at 564 (quoting *Kelly v. Med. Life Ins. Co.*, 31 Ohio St. 3d 130, 132, 509 N.E.2d 411 (1987)). In contract interpretation, a party's external objective manifestation prevails over his private and unexpressed meaning. RESTATEMENT (SECOND) OF CONTRACTS § 212 cmt. a (1981). *See, e.g.*, *Constr. Interior Sys., Inc. v. Marriott Family Rest., Inc.*, 984 F.2d 749, 754 (6th Cir. 1993). A party's unspoken, secret, or subjective intent is irrelevant. *N.Y. Cent. Ry. Co. v. Mohney*, 252 U.S. 152, 157 (1920); *Bach v. Friden Calculating Mach. Co.*, 155 F.2d 361, 365 (6th Cir. 1946). *See also Swaminathan v. Swiss Air Transp. Corp.*, 962 F.2d 387, 389 (2d Cir. 1992).

When the terms of a contract are unambiguous, the court will not create a new contract by finding an intent not expressed in the clear language employed by the parties. *Shifrin v. Forest City*

Case No. 5:02-CV-1765
Gwin, J.

*Enters., Inc.*, 64 Ohio St. 3d 635, 637, 597 N.E.2d 499 (1992). There is no remedy in either law or equity that will enforce an agreement that was never made, including those based on one party's unexpressed wishes. *Black v. Rudy*, 1978 WL 216351 (Ohio Ct. App. Nov. 22, 1978).

### III. Analysis

Defendants premise their Rule 60(b)(1) motion on the presence of two purported "mistakes" in the underlying litigation. First, the terms of the Settlement Agreement incorrectly reflect Defendants' intended agreement. Second, the Court mistakenly imposed personal liability on Petry to pay a portion of Defendants' debt to Parrot. Contrary to Defendants' assertions, neither purported "mistake" is within the scope of the Rule 60(b)(1). The Court addresses and dismisses each allegation in turn.

Defendants first argue that they made an excusable mistake in entering into the Settlement Agreement and, therefore, the Court must excuse their performance under Rule 60(b)(1). Defendants claim that they intended to pay Parrot the Settlement Amount only from proceeds of the Kooties revenue stream. They say that they belatedly discovered the Court's May 2005 Order entered judgment against "all the assets of the entire company." As a result of this "mistake," the Defendants argue that the Court must vacate its May 2005 Order pursuant to Rule 60(b)(1).

Defendants did not make an excusable mistake when they entered into the Settlement Agreement with Parrot. As the transcript from the settlement conference shows, the terms of the agreement are straightforward. Specifically, Defendants agreed to pay Parrot $250,000 and interest by February 13, 2005. In exchange for deferring payment of the Settlement Amount, Defendants agreed to secure it by granting lien against the Kooties revenue stream. Defendants also agreed to pay Parrot commissions. Petry and his counsel knowingly and intelligently adopted the terms at the

-8-

Case No. 5:02-CV-1765
Gwin, J.

close of the settlement conference. The parties discussed these terms in the 2004 hearings before Magistrate Judge Limbert, who clearly reiterated them in his Report and Recommendation.

Nothing in the record supports Defendants' claim that the Kooties revenue stream would be the sole – or any – source of Parrot's recovery. The record is wholly-silent as to the source of the deferred payment of the Settlement Amount. Further, the only reference to the Kooties revenue stream is as securitization device for the deferred payment of the agreed-to $250,000 and interest. The transcript from the settlement conference makes this clear: "[a]nd as security for that deferred payment, Fineline will grant a lien on the revenue stream from the Kooties product line . . . ." [Doc. 42 at 3.]

Defendants may wish that they had agreed to different terms in the Settlement Agreement, but that wish is irrelevant. The Court can only adjudge Defendants' objective external expressions of their intent to be bound. If Defendants wanted different terms in the Settlement Agreement, they should have said so on February 13, 2003. Defendants said nothing and, thus, are bound by the objective, external, and express terms of their agreement.

Further, the Settlement Agreement is an enforceable contract with unambiguous terms. As a result, the Court cannot, and will not, reform those terms as requested by Defendants. The Court does not find that Defendants' promises in the Settlement Agreement result from any excusable mistake. Accordingly, Rule 60(b)(1) does not apply.

Defendants' second argument appears to be that the Court made a "substantive mistake of law or fact" in its May 25, 2005 judgment against Fineline and Petry. Defendants say that Petry "never authorized" the judgment. Defendants say that the Court's May 2005 Order against Petry "is a mistake and needs to be corrected to properly reflect the agreement and understanding of all

-9-

Case No. 5:02-CV-1765
Gwin, J.

parties involved." [Doc. 88 at 4.]

Defendants appear confused.

As the principal of Fineline, Petry knowingly and intelligently approved the Settlement Agreement with Parrot. At the time of the agreement, Petry may very well have intended to use Fineline's corporate status to shield his personal liability for the Settlement Amount. Again, the Court does not inquire into Petry's unexpressed, subjective desires. The Court does recognize that corporate law allows Petry, Fineline's principal, to make such decisions.

Petry changed his legal status, however, when he caused the Court to hold him in contempt on August 2, 2004. Individuals held in contempt are personally liable for the full amount of the sanction. *Elec. Workers Pension Trust Fund of Local Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 383 (6th Cir. 2003). Petry, a named defendant in this lawsuit since its inception, agreed to perform certain actions as a settlement to litigation pending before this Court. Since then Petry has not performed as he promised. He has also withheld the promised performance of Fineline. As a result, in August 2004, the Court entered a contempt order against Petry and Fineline. In May 2005, the Court apportioned Defendants' outstanding debt to Parrot between Fineline and Petry. Thus, Petry's personal liability on Defendants' debt to Parrot is neither a mistake of law or fact. Thus, Rule 60(b)(1) does not apply.

Fineline and Petry have engaged in contumacious conduct for over three years. Defendants have exploited the Court's resources in their constant effort to avoid paying their lawful debt to Parrot. The record shows that Fineline and Petry are financially liable to Parrot and they must perform their promises as ordered by the Court.

IV. Conclusion

Case No. 5:02-CV-1765
Gwin, J.

For these reasons, the Court **DENIES** Defendants' motion to vacate judgment and **DENIES** Defendants' motion to stay execution of collection proceedings.

IT IS SO ORDERED.


Dated: September 18, 2006                    s/      *James S. Gwin*
                                                           JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE